Feinman, J.,
dissents in part in a memorandum as follows: I agree with the majority that defendant IMS Safety Corp. was not a statutory agent subject to liability under Labor Law § 240 (1) or § 241 (6). However, I dissent in part, because I believe the motion court should have granted plaintiff’s motion for summary judgment on his Labor Law § 240 (1) claim as against the other defendants. Plaintiffs work in close proximity to an open, 10-foot hole posed an elevation-related risk covered by Labor Law § 240 (1) as a matter of law (see Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 449-450 [1st Dept 2013]).
The Court of Appeals has clearly stated that section 240 (1) “was designed to place the responsibility for a worker’s safety squarely upon the owner and contractor rather than on the worker” and that the statute “is to be liberally construed to achieve its objectives” (Felker v Corning Inc., 90 NY2d 219, 224 [1997]). Plaintiff established his entitlement to judgment as a matter of law by showing that defendants failed to provide safety devices adequately protecting him from falling through the hole (see Burke v Hilton Resorts Corp., 85 AD3d 419, 419-420 [1st Dept 2011]). The president of defendant IMS at the time of the accident admitted in his deposition that on projects similar to this one, a metal guardrail system would typically be placed around a manhole while it was uncovered to provide protection to workers under the applicable OSHA regulations. He further stated that responsibility for providing this guardrail was shared by IMS, the MTA supervisor, and the superintendent from plaintiffs employer, third-party defendant P.A.L. Environmental Safety Corp. I do not find sufficient support in the record for the majority’s statement that, had this guardrail been provided, it would have been opened or removed from the manhole before the accident occurred and therefore would not have prevented plaintiffs injuries. At the time of the accident, the cover was not on the manhole, and no guardrail or other adequate safety device was constructed, placed, or operated as to give proper protection to plaintiff.
*634 The majority opinion concludes that plaintiff’s failure to ensure that the manhole was covered before he began dismantling the surrounding enclosure of wood and plastic sheeting was the sole proximate cause of his fall through the hole. It is true that “if the plaintiff is solely to blame for the injury, it necessarily means that there has been no statutory violation” (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 290 [2003] [emphasis added]). Under the “sole proximate cause” doctrine, a defendant can avoid liability by showing that the “plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured” (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 40 [2004]). A plaintiff “is expected, as a normal and logical response, to obtain a safety device himself’ only when the plaintiff “knows exactly” where it is located, and “there is a practice of obtaining the safety device himself because it is easily done” (Auriemma v Biltmore Theatre, LLC, 82 AD3d 1, 10-11 [1st Dept 2011] [internal quotation marks omitted]; see Cherry v Time Warner, Inc., 66 AD3d 233, 238 [1st Dept 2009]). Furthermore, the “general availability of safety equipment at a work site does not relieve the defendants of liability” (Auriemma at 11).
Here, the majority is of the opinion that “plaintiff was provided with the perfect safety device, namely, the manhole cover” and holds that plaintiff was the sole proximate cause of his accident because he disregarded his supervisor’s instruction to replace the manhole cover before dismantling the enclosure for asbestos containment. In my view, the majority misconstrues the record. Plaintiff could not have physically replaced the manhole cover by himself, as it was too heavy for one person to move. Plaintiffs supervisor stated only that, at the beginning of the project, he directed plaintiff to not perform work around the manhole area while it was uncovered; there is no indication that he directed plaintiff to personally cover the manhole. The supervisor further stated that ensuring the manhole was covered was the responsibility of the IMS representative, who was sitting in his car a few feet from the area at the time of the accident. Plaintiff had not personally removed the manhole cover at the beginning of the shift. There is evidence that the electrical lights in the work area had been turned off before the deconstruction work began. At the very least, these facts raise a triable issue of fact as to whether plaintiff was the sole proximate cause of his accident.
Furthermore, while the manhole cover would have prevented *635 this particular accident, it was not an adequate precaution against the danger of falling from a height, as contemplated by Labor Law § 240 (1), throughout the duration of the work shift. The risk of falling through the manhole existed for the entire time the cover was off, not only while the surrounding enclosure was being deconstructed. Had a safety device like the guardrail discussed above been provided, plaintiff would have been protected from this accident, whether it occurred during the deconstruction or at any earlier point of his shift. As already noted, I do not read the record to support the majority’s statement that the railing would have been opened or removed prior to deconstruction of the enclosure. Even if plaintiffs failure to ensure that the manhole was covered was a contributing cause of his accident, defendants’ violation of Labor Law § 240 (1) in failing to provide a railing or other adequate safety device while the cover was off the manhole was also a proximate cause. Therefore, any negligence on the part of plaintiff was not the sole proximate cause of the accident. His actions merely amount to comparative negligence, and do not provide a defense to his Labor Law § 240 (1) claim (see Stolt v General Foods Corp., 81 NY2d 918 [1993]).
Contrary to the City’s contention, it is subject to liability under Labor Law § 240 (1) as an owner of the premises. The City had a sufficient nexus to plaintiff, since it leased the premises to the Transit Authority, which retained plaintiff’s employer to remove asbestos from the premises (see Sanatass v Consolidated Inv. Co., Inc., 10 NY3d 333, 341-342 [2008]).
Accordingly, I would modify the order to grant plaintiffs motion for partial summary judgment on his section 240 (1) claim against defendants MTA, NYCTA, and the City. [Prior Case History: 2012 NY Slip Op 30855(U).]